20239

INSURANCE SERVICES OFFICE et al., Petitioners-Respondents, v. The SOUTH CAROLINA INSURANCE COMMISSION and Howard B. Clark as Chief Insurance Commissioner, Respondents-Appellants.

(226 S. E. (2d) 33)

*Messrs. Daniel R. McLeod, Atty. Gen., John L. Choate* and *Donald v. Myers, Asst. Attys. Gen.,* of Columbia, *for Respondents-Appellants,*

*R. Bruce Shaw, Esq., of Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Petitioners-Respondents,*

*Messrs. Daniel R. McLeod, Atty. Gen., John L. Choate* and *Donald V. Myers, Asst. Attys. Gen.,* of Columbia, *for Respondents-Appellants, in Reply.*

June 10, 1976.

LEWIS, Chief Justice.

On July 9, 1974, Act No. 1177 of the 1974 Acts of the General Assembly (commonly referred to as the no-fault insurance law) was signed by the Governor. The pertinent provisions are now contained in Sections 37-591 *et seq.* and 46-750.101 *et seq.* of the Code Supplement. This statute made considerable changes in the insurance law and had an effect upon premium rates. Among the changes were the requirements that every motor vehicle liability insurance policy, issued after October 1, 1974, must provide Basic Economic Loss Coverage (BEL) (no-fault insurance benefits) up to an amount of one thousand dollars per person (Section 46-750.111, Code Supplement); that insurers are required to write insurance for all applicants (Section 37-591.11, Code Supplement); and bodily injury and property damage limits were increased (Section 46-750.32, Code Supplement).

Section 3, Article 2, Section 3 of Act No. 1177, now codified in Section 37-591.2, affects the rates to be charged, in certain respects, for automobile insurance for the six

month period following the effective date of the Act (July 9, 1974). This action involves the interpretation of the provisions of that section to determine their effect upon the approved rates being charged for insurance coverage at the time of its adoption. Section 37-591.2 reads as follows:

"Notwithstanding any other provision of this Act respecting the approval of rates or premium charges for automobile insurance, for a period of six months following the effective date of this Act, no such rate or premium charge shall be approved if such rate or premium charge exceeds ninety percentum of the closest comparable rate or premium charge for the applicable class and territory in accordance with the rating plan and system in use on the effective date of this Act for the rating organization for voluntary insurance having the largest number of members and subscribers in South Carolina; nor shall any individual policyholder of any insurer be required to pay to his insurer for such automobile insurance a premium charge in excess of that in effect for such policyholder on the effective date of this Act unless there has been a change in the applicable rate or territorial classification of the policyholder's risk or such policyholder has incurred surcharge points by reason of accidents or violations; provided, however, that if an insurer is required by this section to receive from such policyholder a premium charge less than that which would otherwise be applicable under its approved rating plan or system, it may credit the excess of its normal premium charge over the premium chargeable under this section to any reserve required to be established under 37-591.62."

The reference in the quoted section to "the rating organization for voluntary insurance having the largest number of members and subscribers in South Carolina" refers to respondent Insurance Services Office (ISO), which is a rating and statistical organization licensed to operate in South Carolina. The other respondents are insurance companies represented by ISO.

Upon the effective date of Act No. 1177 respondents were operating under premium rates which had been previously approved by appellants in 1970 pursuant to the statutory scheme then in existence, which provided that premium rates not be "excessive" nor "inadequate." See Sections 37-673 and 37-683, Code of Laws.

Of course, there was no required BEL coverage prior to October 1, 1974, so no rates for that coverage had been approved by appellants.

Following enactment of Act No. 1177, appellants ruled that the above quoted Section 37-591.2 invalidated all rates and premiums then in effect as of October 1, 1974, the date when BEL coverage became mandatory, and held that, as of October 1, 1974, all insurers were required to file for new rates on all automobile coverages, subject to the 90% limitation referred to in Section 37-591.2. The position of appellants is that since all insurance rates must be approved and since no company had approval for BEL rates prior to the adoption of Act No. 1177, all companies were required to seek approval for rates to be charged for such coverage. It is then argued that the rates for the new BEL coverage cannot be considered in isolation without reviewing the other rates in effect for related coverage. This being true, it is then further argued that all companies must file for re-approval of all rates, including those previously approved by appellants, and that Section 37-591.2, prohibits approval of any rate in excess of the 90% of ISO rates on July 9, 1974, the effective date of the Act. This meant that respondents would have been required to reduce their rates as much as 10% because they were charging in excess of 90% of ISO rates in effect July 9, 1974. Under respondents' rulings, this reduction would have continued until January 9, 1975, the end of the six month period after the approval of the Act, at which time insurers could file for rate increases.

The lower court rejected appellants' interpretation of the Act, holding, in effect, that the application of Section 37-591.2 was prospective and had no application to existing coverages. An order was accordingly issued restraining appellants from taking punitive action against respondents for their failure to reduce their rates to comply with the 90% limitation of Section 37-591.2. The lower court properly construed the Act and we affirm.

We agree with the lower court that there is nothing in the Act which would require a holding that those rates, which had been previously approved as adequate and not excessive, would automatically be disallowed. If the General Assembly had intended to require all insurers in South Carolina to file for new rates, it would have been very easy to have so stated. It did not do so and a careful analysis of the section in question convinces us that no such result was intended.

The explicit language of Section 37-591.2 indicates that it was intended to apply prospectively to rates which insurers sought to have approved during the initial period. The section says: ". . . for a period of six months following the effective date of this Act, no such rate or premium charge *shall be approved.*" Respondents were operating under rates which had been approved in 1970. The Act did not expressly disallow these existing rates and there is no provision which would require respondents to seek approval of another rate for the six month period. Certainly, we have to read into the Act nonexistent provisions to hold that existing rates were required to be reduced, as appellants' interpretation would have required.

The existing legislative standard for approval of premium rates was that they not be excessive, but must be adequate (Section 37-683, 1962 Code of Laws); and was reenacted by Act No. 1177 (Section 37-591.25). Therefore, there was no new standard for approval of rates for automobile liability insurers. This continuation of the same

standard for fixing premium rates negatives any implication, in the absence of express language to the contrary, that the General Assembly intended to automatically disallow all existing rates upon the adoption of Act No. 1177.

Appellants' argument that the quoted section of the Act automatically invalidates the existing rates and requires that they be redetermined, along with the BEL rates, is based largely upon the assumption that the rates for other coverages and the BEL rates were so related and intertwined as to require that they be approved together. This assumption is not supported by the record. In fact, appellants have approved separate BEL filings for premiums for some companies. The BEL coverage was new and never before required in South Carolina. Obviously, it will have an effect upon the loss experience of the insurers; but this record reveals no reason why that effect could not be calculated into the BEL rates without invalidating previously approved rates.

Another provision of Section 37-591.2 sustains the interpretation of the lower court. A portion of the quoted section states: ". . . nor shall any individual policyholder of any insurer be required to pay his insurer for such automobile insurance a premium charge in excess of that in effect for such policyholder on the effective date of this Act." Thus, any insured continuing with the same insurer cannot be charged a greater rate than that in effect on July 9, 1974, when the Act became effective. This language contemplates that an insurer can continue to charge the same rate to the same insured. It does not say that an insured must be charged less, but merely that he can be charged no more. There is certainly no indication that rates must be reduced.

We are controlled by the principle that, "in the absence of ambiguity and absurdity, a statute must be applied according to the clear meaning of its lan-

guage." *Boyd v. State Farm Mutual Automobile Insurance Company,* 260 S. C. 316, 195 S. E. (2d) 706.

When Section 37-591.2 is interpreted according to the plain and literal meaning of the language used, the intent is clear that the 90% limitation applies only to insurers who sought to have a rate approved during the time set forth in that section.

The judgment of the lower court is accordingly affirmed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.